## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID R. SPARKS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>(1)   JOHN M. CAMPBELL & CO., )<br>(2)   PETROSKILLS, LLC, )<br>)<br>Defendants. ) | Case No. <u>CIV-14-546-W</u> |

## COMPLAINT

Plaintiff David R. Sparks ("Plaintiff"), for his cause of action against Defendant John M. Campbell & Co., ("JMC") and PetroSkills, LLC, alleges and states:

### The Parties

1.     At all times herein mentioned, Plaintiff was and now is a resident of City of Oklahoma City, Cleveland County, State of Oklahoma.

2.     At all relevant times herein mentioned, Defendants were and are now domestic for-profit corporations located and operating out of the County of Cleveland, State of Oklahoma.

### Jurisdiction and Venue

3.     This action arises and jurisdiction is proper under the provisions of Section 7(b) of the Age Discrimination in Employment Act (ADEA) 29 U.S.C. Section 626(b), and 28 U.S.C. §1331.

4.      Venue is proper in the Western District of Oklahoma in that the employment practices hereinafter alleged to be unlawful were committed in the Western District of Oklahoma pursuant to U.S.C. Section 1391(c) and 29 U.S.C. Section 626(c)(1).

## FACT ALLEGATIONS

5.      Plaintiff was born December 29, 1952 and is 61 years old.

6.      Defendant JMC is the exclusive provider of PetroSkills facilities training and provides facilities training in the oil and gas industry.  Defendants provide training curriculum to teach skills utilized in the oil and gas industry from well-head to the finished product.

7.      Since 1998, Plaintiff worked with JMC in different positions.  His most recent position, prior to his termination, was Building/Facilities Manager.

8.      Earlier in his career, in approximately 2011, Plaintiff worked in the position of Information Services Manager.  During that time, he was told that IT is for "young guys."

9.      During Plaintiff's employment, a co-employee twenty (20) years Plaintiff's junior was made Senior Manager of Information Services, and ultimately was placed as Plaintiff's supervisor.  Plaintiff complained about the decision and was moved to report directly to the Chief Operations Officer.

10.     In Fall 2012, PetroSkills' ownership of Defendant JMC became complete. Many of the same managers in Plaintiff's supervision line remained in his or her jobs, including some of those who had made comments about Plaintiff not being a "young guy."  Additionally, the Chief Operations Officer was terminated prior to the sale. Plaintiff then reported to the President, Robert Hubbard ("Hubbard").

11.     After Petroskills assumed complete ownership, Plaintiff and others were told that they should go along with the purchase, that they would have more opportunities, and that nobody was going to lose their jobs.

12.     In December 2012, Hubbard and John Morgan ("Morgan"), another employee in Defendants' administration, took Plaintiff to lunch and informed him that the position of Building/Facilities Manager would probably not continue after the sale was finalized.  They told him that they would like to find another position for him. They told him he was a valued employee, they did not want to lose him, and to pick a position he wanted to continue in.

13.     Similarly, in January 2013, Plaintiff was told that his position was not going to continue for much longer, and that Defendants would assist in finding Plaintiff a job within PetroSkills.

14.     On or about March 1, 2013, Plaintiff was informed that his position had been cancelled effective March 31, 2013.  Once again, Defendants stated that they supported Plaintiff in obtaining any position that became available.

15.     Following his termination, Plaintiff was never informed of any new position openings or current job vacancies within PetroSkills, and he had to personally call the Director of Human Resources to get a listing of all open positions.  This listing showed only jobs available in the Houston area or overseas.

16.     Just a week prior to his last day at the company, Plaintiff learned from another employee that Defendants actually had an open Office Manager position in the Norman office.  Plaintiff was never notified of this position.

17.     Plaintiff requested a job description and found that he had been successfully performing eleven (11) out of the twelve (12) job duties for the past ten (10) years already.

18.     Plaintiff applied for the position through the regular job application process, but received no response prior to his termination from Defendants on March 28, 2013.  Plaintiff was the only person to apply through the regular job application process.

19.     Plaintiff ultimately was called in for a formal job interview for the Office Manager position in early April.  Defendants acknowledged that Plaintiff was fully qualified for the position, and Plaintiff expressed no reservations about the pay or the job duties.

20.     Plaintiff was not offered the position, and was later learned that the interview was a sham because the decision had already been made to give the position

to Mia Prater, who is approximately thirty (30) years younger than Plaintiff.  Defendants

also later hired an Administrative Assistant to perform secretarial duties for Prater,

which were originally included as job duties for the Office Manager.

21.    Plaintiff filed his Charge of Discrimination with the Equal Employment

Opportunity Commission ("EEOC") on September 20, 2013, and thereafter, on February

24, 2014, the EEOC issued its Dismissal and Notice of Suit Rights.

## FIRST CAUSE OF ACTION

### VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA) OF 1967, AS AMENDED, 29 U.S.C. § 621, ET SEQ

22.    Plaintiff incorporates by reference Paragraphs 1 through 21 as though set

forth in full herein.

23.    At all relevant times herein mentioned, Plaintiff was in the protected age

classification.

24.    By reason of Plaintiff's education, experience and job knowledge, Plaintiff

at all times was qualified to perform the job duties and responsibilities of the position of

Buildings/Facilities Manager and Office Manager.

21.    Plaintiff's age was a motivating and significant factor in Defendants'

decision to terminate Plaintiff's employment and in failing to rehire Plaintiff in the

similar Office Manager position.

22.    As a direct and proximate result of Defendants' discriminatory treatment

and actions of Plaintiff as hereinabove alleged in violation of the Age Discrimination in

Employment Act of 1967, as amended, Plaintiff has suffered, and is now suffering, and will continue to suffer, irreparable injury and economic loss, and Plaintiff seeks all of the relief afforded by the Age Discrimination in Employment Act of 1967, as amended.

23.     Defendants were, and are, employers within the meaning of § 11(b) of the ADEA (29 U.S.C. § 630(b)) in that they did and now do employ more than 20 persons.

24.     Defendants' violation of the ADEA of 1967, as amended, was wilful.

25.     Defendants have no legitimate, good faith reason for Plaintiff's termination or their decision not to hire or transfer Plaintiff to the Office Manager position, and their purported reason that Plaintiff's job was eliminated is pre-textual and a sham.

26.     Plaintiff has complied with all of the administrative requirements prior to filing this action and this action has been filed within ninety (90) days from the issuance of the Equal Employment Opportunity Commission's Dismissal and Notice of Suit Rights.

WHEREFORE, Plaintiff demands and prays against Defendants as follows:

(1)     That a judgment be entered declaring that Plaintiff was unlawfully discriminated against by Defendants in violation of the Age Discrimination in Employment Act of 1967, as amended;

(2)     That Defendants be ordered to make Plaintiff whole by providing back pay and any and all other remedies authorized by the ADEA;

(3)     That Defendants be required to compensate Plaintiff for the full value of wages and benefits that Plaintiff would have received if it had not been for Defendants' unlawful treatment of Plaintiff, with interest thereon, from the date Plaintiff was demoted;

(4)     That a final judgment in favor of Plaintiff and against Defendants be entered for liquidated damages in an amount equal to the wages due and owing Plaintiff as provided by 29 U.S.C. § 626(b) and § 216(b);

(5)     That Defendants be enjoined from discriminating against Plaintiff in any manner that violates the ADEA;

(6)     That Plaintiff be awarded his costs and expenses of this litigation, including reasonable attorney's fees, and expert witness fees, and;

(7)     That Plaintiff be granted such legal and equitable relief as the Court may deem just and proper.

WARD & GLASS, L.L.P.

s/Scott F. Brockman
Stanley M. Ward, OBA #9351
Woodrow K. Glass, OBA #15690
Scott F. Brockman, OBA #19416
R. Ben Houston, OBA #14751
Barrett T. Bowers, OBA #30493
1821 E. Imhoff Road, Suite 102
Norman, Oklahoma 73071
(405) 360-9700
(405) 360-7902 (fax)
ATTORNEYS FOR PLAINTIFF

**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**